**INTERSTATE COMMERCE COMMISSION, Plaintiff,**

v.

**BROWNING–FERRIS INDUSTRIES, INC., Defendant.**

**No. CV 80–M–1489.**

United States District Court, N. D. Alabama, W. D.

Dec. 21, 1981.

---

Daniel S. Linhardt, Charles E. Wagner, Stanley M. Braverman, Francine Pinto, I. C. C., Washington, D. C., for plaintiff.

Edward S. Allen, John P. Scott, Jr., Balch, Bingham, Baker, Hawthorne, Williams & Ward, Birmingham, Ala., David A. Sutherland, Fulbright & Jaworski, Washington, D. C., Bernard H. McLaughlin, Jr., Stockwell, Sievert, Viccellio, Clements & Shaddock, Lake Charles, La., Merrick C. Walton, Houston, Tex., for Browning-Ferris Industries, Inc.

## MEMORANDUM OPINION

McFADDEN, Chief Judge.

Plaintiff seeks to enjoin defendant from the interstate transportation of hazardous wastes until defendant obtains appropriate operating authority from plaintiff pursuant to 49 U.S.C. § 10921.

This action was filed on November 10, 1980, along with motions for a temporary restraining order and for a preliminary injunction. Plaintiff, on the day of filing, abandoned the motions for temporary and preliminary relief and sought the earliest possible hearing on the merits. The matter was heard on November 19, 1980. At the conclusion of the hearing, the court dictated findings and conclusions into the record, holding that this waste was not property within the meaning of the Interstate Commerce Commission's regulations and that the Commission, therefore, had not exercised jurisdiction over its interstate transportation. The court also held that this was private carriage or carriage incidental to another primary business operation and consequently exempt from ICC regulation. The injunctive relief was accordingly denied. This matter is presently before the court on plaintiff's motion to reconsider the holding that the material at issue was not property.

Plaintiff contends that defendant is in violation of 49 U.S.C. § 10921:

> Except as provided in this subchapter or another law, a person may provide transportation or service subject to the jurisdiction of the Interstate Commerce Commission under subchapter II, III, or IV of chapter 105 of this title or be a broker for transportation subject to the jurisdiction of the Commission under subchapter II of that chapter, only if the person holds the appropriate certificate, permit, or license issued under this subchapter authorizing the transportation or service.

Plaintiff's complaint contends that defendant is a company engaged in commerce for hire within the meaning of 49 U.S.C. § 10521:

> (a) Subject to this chapter and other law, the Interstate Commerce Commission has jurisdiction over transportation by motor carrier and the procurement of that transportation to the extent that passengers, property, or both, are transported by motor carrier—
>
> (1) between a place in—
>
> (A) a State and a place in another State;
>
> (B) a State and another place in the same State through another State. . . .

Plaintiff therefore claims that defendant is in violation of the statute since BFI admittedly holds no authority from the Commission, and without dispute was engaging in interstate transportation.

Plaintiff's contentions give rise to three questions:

1. Was this private carriage?

2. Was the transportation incidental to another primary business operation?

3. Is this waste "property" within the meaning of the statute?

Private transportation is not subject to regulation by the Interstate Commerce Commission. 49 U.S.C. §§ 10102(2), (10), (13), & 10521. Also exempt from the jurisdiction of the ICC is the transportation of property by motor vehicle by a person engaged in a business other than transporta-

tion when the transportation is within the scope of and furthers the primary business of that person. 49 U.S.C. § 10524. ˉ

Plaintiff now concedes that the transportation here involved was private carriage or that it was transportation incidental to another primary business. The court, therefore, need not deal with these two issues.

Although plaintiff's concession dictates dismissal of the suit, plaintiff has requested the court to reconsider its holding that these wastes were not property within the meaning of the Act. This request, it may be supposed, is made to eliminate any precedential value the holding might have.

The wastes involved were non-radioactive hazardous wastes, elemental and chlorides of mercury.

Congress conspicuously omitted a definition of "property" from the Interstate Commerce Act. Several ICC decisions have discussed what "property" encompasses. The first was *Joray Trucking Corp. Common Carrier Application*, 99 M.C.C. 109 (1965). Joray Trucking Corp. had sought authorization to transport rock and debris from excavation and demolition sites. The Commission stated:

Here, the debris, although it may ultimately serve a purpose in helping to fill wasteland, is not purchased from the contractors who desire its removal and to them it has a negative value as a commodity, as distinguished from sand and gravel which are commodities having exchangeable values. The contractors are not concerned with any beneficial ownership of the debris, they do not select the destination to which it is to be taken (they may not even know where it will be taken), and it would appear that they relinquish any nominal ownership of the commodity at the time it is loaded and removed from the demolition or excavation site. Thus, we are inclined to conclude that the commodity does not have the attributes commonly associated with the word property.

\* \* \* \* \* \*

All things considered we believe that debris and rubble should not be considered property as affects the jurisdictional scope of the Interstate Commerce Act.

For decisions holding that authority is not required for interstate transportation of garbage, refuse, and trash, see No. MC–123571 (Sub-No. 1), *Wm. Helzer & Sons Contract Carrier Application* (not printed), decided September 28, 1961, and No. MC–124133 (Sub-No. 2), *Miller Common Carrier Application* (not printed), decided September 21, 1962.

99 M.C.C. at 110–11 (footnote omitted). The "negative value" of the commodity in *Joray* was apparently a deciding factor in the Commission's determination that the rock and other debris did not constitute property.

A few years later, however, the Commission found that radioactive wastes constituted property despite the obvious negative value of the commodity. *Long Island Nuclear Service Corp. Common Carrier Application*, 110 M.C.C. 398 (1969). The Commission distinguished *Joray*:

The contention that radioactive waste is without the attributes of the term "property" as used in the act is also predicated on the *Joray* case, ... wherein debris and rubble from demolition sites, in interstate motor movements in the New York City area, were not considered "property" insofar as jurisdiction under the act is concerned. The transportation was, therefore, found not to be covered by part II of the act. In interstate operations of essentially a local character such as the disposal of debris and rubble and trash and garbage collection which appear in marginal purview of the remedial aims of the act, the Commission has exercised discretion in the administration of part II by finding such items not to be "property." A substantial and different public interest, however, inures to responsible for-hire transportation of dangerous traffic whether it be valuable nuclear fuel or radioactive waste, particularly in territorially extensive operations. Similarly, the transportation of explosives is

subject to appropriate operating authority without distinction as to whether, for example, a carrier may be transporting obsolete munitions which have no beneficial value or economic use. The term "property" is not defined in the act and is used therein in its broadest context. Accordingly, we discern no discretion in administering the act to exclude from our economic regulation the transportation of dangerous materials, albeit destined for burial. Although we recognize that the use of nuclear materials is an infant industry which is the subject of regulation by the AEC and other agencies, the issuance of authority to interstate motor carriers transporting nuclear commodities, including radioactive waste, remains vested in this Commission. We conclude that the proposed operations require appropriate operating authority, and that the motion to dismiss should be overruled.

110 M.C.C. at 403–04 (footnote omitted).

In *Long Island* the Commission stated that the *Joray* decision hinged not so much on the worthlessness of the commodity as on the local character of the trucking company's disposal of the debris "which appear in marginal purview of the remedial aims of the act." *Id.* Thus, the fact that the radioactive wastes in *Long Island* were worthless was not determinative, whereas the dangerousness of the traffic was apparently the determining factor. 110 M.C.C. at 404. The Commission stated that the term "property" would be used in its broadest context in order to encompass the transportation of dangerous materials, even if such materials have no beneficial value or economic use. *Id.* Four commissioners dissented in part, and two commissioners dissented on the ground that *Long Island* cannot be reconciled with *Joray* since radioactive waste is at least as worthless as garbage and consequently possesses none of the attributes typically ascribed to property by the Commission.

In fact, the Commission reversed itself in *Nuclear Diagnostic Laboratories Contract Carrier Application*, 129 M.C.C. 339 (1978) (Nuclear Diagnostic I), finding that radioac-

tive wastes were not within the regulatory jurisdiction of the ICC. The ICC noted that the safety considerations expressed in *Long Island* were adequately taken care of by existing DOT and NRC regulations. 129 M.C.C. at 343–44.

Yet one year later, the Commission again reversed itself holding that radioactive waste material destined for burial is property within the meaning of 49 U.S.C. § 10521. *Nuclear Diagnostic Laboratories, Inc., Contract Carrier Application*, 131 M.C.C. 578 (1979) (Nuclear Diagnostic II). The Commission concluded:

Upon further reflection, we conclude that the economic value of hazardous materials, including radioactive waste destined for burial, should not be the sole criterion for determining whether these commodities are "property" subject to the general jurisdiction of the Commission (49 U.S.C. § 10521). "Property" is not defined in the Interstate Commerce Act and, as we noted in our prior report, the word is subject to many different meanings. "Property" connotes ownership as well as value. Something that is owned can be "property" notwithstanding its lack of economic value.

\* \* \* \* \* \*

Our decision in *Joray Trucking Corp. Common Carrier Application*, 99 M.C.C. 109 (1965) is not controlling here. In that case, debris and rubbish from demolition sites in the New York City area were found not to be "property" covered by the motor carrier portion of the act. Joray's operations, although interstate, were essentially local in nature and only marginally related to the remedial aims of the act. By contrast, a substantial and different public interest is involved here. Nuclear waste materials are often transported over long distances (as seen in this application), they generate significant public concern, and carriers may consider them unattactive [sic] commodities to transport (see *Akron, Canton, supra*). In order to ensure the availability of economical transportation of nuclear materials, the Commission must retain jurisdiction.

131 M.C.C. at 580–81. Plaintiff relies upon this language for its contention that the waste here involved is property. (Tr. 164–68).

The Commission has expanded and contracted the waste classifications that constitute property. It has not, however, held that it has jurisdiction over non-nuclear wastes that are not to be recycled or reused. With respect to reusable waste products, the Commission instituted a rulemaking proceeding to develop special procedures for licensing the transportation of reusable waste products. *Ex Parte No. MC–85, Transportation of "Waste" Products for Reuse and Recycling (General Motor Carrier Licensing)*, 114 M.C.C. 92 (1971). The Commission recognized that an extension of its economic regulation to encompass certain types of waste products necessitated a rulemaking proceeding:

> [W]e conclude that a rulemaking proceeding is not only desirable, but necessary in these circumstances.

*Id.* at 105. Of course, any proposed regulations had to fall within the ICC's jurisdiction, which was described thusly:

> *This Commission, however, does not have the option of picking and choosing the commodities it will regulate. That is the province of the Congress* which, by part II of the Interstate Commerce Act, has decreed that the for-hire motor transportation of "property" in interstate or foreign commerce, with specified exceptions not here relevant, shall be subject to full economic regulation by this Commission. The essential question is therefore whether the commodities here to be transported are in fact "property" for purposes of our jurisdiction. *The transportation of trash and garbage, which has no property value, solely for the purpose of disposal is not subject to economic regulation by this Commission.*

*Id.* at 104 (citation omitted) (emphasis supplied).

Because they possess a " 'negative' property value," the Commission specifically excluded waste products with no recycling potential:

It is the purpose of this proceeding to remove any regulatory hindrances to the rendition of such transportation services on an efficient and economical basis and, by so doing, to encourage and assist in the development of vitally needed recycling programs.

\*　　\*　　\*　　\*　　\*　　\*

> For example, *commodities transported for the purpose of disposal or to be used as landfill (a method of disposal) do not meet the criteria of our commodity definition (they are exempt from our economic regulation)* nor would such commodities as nuclear or radioactive waste materials *or such bulk waste materials as spent acids which are a part of a shipper's regular manufacturing process.*

*Id.* at 103–08 (emphasis supplied).

Since its rulemaking proceeding, the Commission has not changed its position with regard to non-radioactive hazardous wastes, although, as noted, it has continually vacillated on the need for economic regulation of radioactive wastes.

The Commission noted that the Nuclear Regulatory Commission and the Department of Transportation have primary jurisdiction over the safety aspects of the involved transportation, but found that its regulatory guidance was needed, not because of safety considerations, but "to ensure the availability of economical transportation of nuclear materials." *Nuclear Diagnostic II*, 131 M.C.C. at 581.

Such economic regulation, even if previously justified, is no longer the province of the ICC. The Motor Carrier Act of 1980, Pub.L.No. 96–296, 94 Stat. 793 (1980), clearly relies upon the competitive forces of the marketplace to ensure that adequate transportation equipment is available. Moreover, in § 30(b) of the Motor Carrier Act, Congress delegated exclusively to the Secretary of the DOT the responsibility for determining the minimal levels of financial responsibility required for transporters of hazardous wastes by motor vehicle in interstate or intrastate commerce.

In this case, plaintiff contends that in *Nuclear Diagnostic II* the Commission extended its jurisdiction to regulate the transportation of all types of hazardous wastes, not just radioactive waste. Plaintiff contends that the Commission's conclusion "that the economic value of hazardous materials ... should not be the sole criterion for determining whether these commodities are 'property' subject to the general jurisdiction of the Commission," when considered in light of language distinguishing *Joray*, implies a desire by the Commission to regulate non-radioactive hazardous wastes having no economic value. *Nuclear Diagnostic II*, 131 M.C.C. at 580–81.

■ This is a strained interpretation of *Nuclear Diagnostic II*. Assuming that the Commission's Congressional mandate would encompass an extension of its jurisdiction to include regulation of the transportation of hazardous waste, the extent of such regulation is best determined in a rulemaking proceeding pursuant to 5 U.S.C. § 553. Furthermore, if the Commission had intended to expand its jurisdiction to include the regulation of hazardous wastes in the *Nuclear Diagnostic II* adjudicatory proceeding, it could, and should, have stated its intentions clearly. (Of course, in *Nuclear Diagnostic II*, such a statement could only be dictum). Here, however, where the Commission is on record after rulemaking and adjudicatory proceedings as having construed its jurisdiction not to include regulation of the transportation of all hazardous wastes, this court will not support an expansion of the Commission's jurisdiction by a broad reading of ambiguous language contained in one Commission decision.

Plaintiff contends that the passage of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, Pub.L.No. 96–510, Title III, § 306(c)(3), 94 Stat. 2810 (1980), substantiates its contention that the Commission has jurisdiction over all hazardous wastes. This Act, among other things, amends 49 U.S.C. § 11901 by adding the following subsection:

(h) A person subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title, or an officer, agent, or employee of that person, and who is required to comply with section 10921 of this title but does not so comply with respect to the transportation of hazardous wastes as defined by the Environmental Protection Agency pursuant to section 3001 of the Solid Waste Disposal Act ... shall, in any action brought by the Commission, be liable to the United States for a civil penalty not to exceed $20,000 for each violation.

The ICC contends that Congress intended for the Commission to examine the fitness of anyone who desires to haul hazardous wastes. The legislative history of the amendment, however, makes it perfectly clear that the Commission's jurisdiction *is not extended by the amendment*, which was enacted merely to increase the fine. The sponsor of this subsection, Senator Tsongas, stated:

My amendment makes those carriers currently subject to section 10921 of title 49, United States Code liable for a civil penalty of $20,000 per violation for failure to comply with that section. *It does not extend the Commission's jurisdiction but merely increases the fine.* While the Commission has asserted that authority is necessary to transport hazardous wastes, certain firms are challenging that assertion. The amendment is not intended to prejudge pending litigation nor to preclude the Commission from spelling out its jurisdiction in this area.

126 Cong.Rec. S15,781 (daily ed. Dec. 5, 1980) (emphasis supplied). Immediately thereafter, Senator Cannon concurred in the above interpretation. *Id.* The Chairman of the House Subcommittee on Commerce, Transportation, and Tourism, Congressman James J. Florio, stated:

Section 306(c) amends section 11901 of Title 49, U.S.C., by increasing to $20,000 the maximum civil penalty for noncompliance with section 10921 of that title in respect to the transportation of hazardous waste. The apparent purpose of this section is to increase the deterrent to 'midnight dumper' activities by adding to

the penalties that can be assessed when a person is required to obtain operating rights from the Interstate Commerce Commission and fails to do so. In that respect, the amendment is certainly a good one. However, *I do not understand this amendment to expand in any way the present jurisdiction of the Commission over any particular form of transportation.*

The safety aspects of hazardous waste transportation are already addressed in the Hazardous Materials Transportation Act, 49 U.S.C. § 1801, *et seq.*, and the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901, *et seq.* Indeed, extensive regulations applicable to hazardous waste transportation under the latter legislation just became effective during the past week. *Expanding the Commission's jurisdiction to create economic regulation of hazardous waste transportation would add nothing to these protections and would run counter to the efforts of this Congress to deregulate both rail and motor transportation to the maximum extent feasible.*

Therefore, in considering this legislation as passed by the Senate, the House does not accept section 306(c) as being a substantive amendment to the Commission's jurisdiction, as contained in section 10521 of Title 49 of the United States Code, to encompass transportation of hazardous wastes. *The extent of the Commission's jurisdiction in this field will undoubtedly be settled by the courts in the near future.* To whatever extent, if any, the Commission is held to have jurisdiction over transportation of hazardous wastes, the increased penalty set forth in section 306(c) of the amended H.R. 7020 will have application. [Inserted in the December 3, 1980, permanent Congressional Record at page 11789, by letter dated December 10, 1980] [emphasis supplied].

Obviously, Congress sought to avoid influencing any court proceeding.

■ Accordingly, the court reiterates its decision that these wastes were not proper-

ty within the meaning of the ICC's regulations. The motion to reconsider is due to be denied, and the case dismissed.